## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Dec 09 2016, 9:23 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Andrew J. Sickmann
Boston Bever Klinge Cross & Chidester
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

Robert J. Henke
Abigail R. Recker
Deputy Attorneys General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In re the Termination of the Parent-Child Relationship of N.H. (Minor Child),

and

J.G. (Mother),

*Appellant-Respondent,*

v.

Indiana Department of Child Services,

*Appellee-Petitioner.*

December 9, 2016

Court of Appeals Case No. 89A04-1606-JT-1262

Appeal from the Wayne Superior Court 3

The Honorable Darrin M. Dolehanty, Judge

Trial Court Cause No. 89D03-1602-JT-5

**Mathias, Judge.**

[1] J.G. ("Mother") appeals the order of the Wayne Superior Court terminating her parental rights to her minor child, N.H. ("Son"). On appeal, Mother claims that there is insufficient evidence to support the trial court's determination that there is a reasonable probability that the conditions that led to Son's removal from Mother's care would not be remedied.

[2] We affirm.

## Facts and Procedural History

[3] Son was born in October 2014 to Mother and N.H. ("Father"). At birth, Son tested positive for both marijuana and opiates. Also, while in Mother's care in the hospital, Son fell from the bed. As a result, the Indiana Department of Child Services ("DCS") began an investigation. During this investigation, Mother admitted to using marijuana and methadone but claimed to have a valid prescription for the methadone. Mother also admitted that Son had fallen out of bed when she fell asleep.

[4] On January 5, 2015, DCS filed a petition alleging that Son was a Child in Need of Services ("CHINS"). The parents subsequently admitted that Son was a CHINS at an initial hearing held on January 30, 2015. Initially, Son remained in the care of Father. However, on February 17, 2015, the trial court authorized Son's removal from Father's care due to ongoing substance abuse and domestic violence between Father and Mother.

[5] At the time of Son's removal, the parents' home was filthy and smelled of feces. Garbage and feces were all over the kitchen floor. Shortly after Son's removal, the parents left that home. Thereafter, Mother and Father were homeless.

[6] At a dispositional hearing held on February 20, 2015, the trial court ordered Mother to participate in a counseling program that would be referred to her by DCS, complete a substance abuse assessment and comply with all recommendations of the assessment, submit to random drug and alcohol screenings, attend scheduled visitations with Son, and refrain from the use of illicit drugs.

[7] DCS referred mother to Harbor Lights for detox and Meridian for a variety of services, including individual counseling, family counseling, a substance abuse assessment, and intensive outpatient substance abuse treatment. Mother, however, did not complete her detox treatment at Harbor Lights; she instead left the program against medical advice. Mother did not subsequently complete a detox program. Mother did complete the substance abuse assessment at Meridian before her unsuccessful stint at Harbor Lights. However, she did not complete the intensive outpatient treatment and only visited the counselor "a couple of times." Tr. p. 156.

[8] Mother also continued her substance abuse during the CHINS case. Indeed, in addition to her admission to using marijuana and methadone during the initial assessment, Mother admitted that she had used a variety of drugs, including, Suboxone, Xanax, "pills," heroin, and methamphetamine. Mother also had five

positive drugs screens in August 2015. Thereafter, Mother agreed to meet with her family case manager to submit to additional drug testing. However, Mother did not always follow through, and although the case manager could not recall precisely how many drug tests were positive, she testified that Mother did continue to test positive for drug use. Mother's second family case manager testified that Mother failed to submit nine scheduled drug tests. As late as January 2016, Mother tested positive for methamphetamine use.

[9] Mother was also not fully compliant with the requirement that she regularly participate in visitations with Son. Visitations were scheduled twice per week, but Mother consistently missed approximately half of these scheduled visits. Also, Mother's behavior during the visits she did attend was, at times, unusual. The visitations where held at a DCS office due to Mother's behavior, which included her becoming angry and aggressive toward DCS staff and failing to accept criticism. The family case manager believed that Mother was intoxicated or under the influence during several visits based on her erratic behavior. During one visitation, Mother repeatedly went into the bathroom with her backpack, leaving Son unattended while she did so. In July 2015, DCS was unable to locate Mother, and she attended none of the scheduled visitations.

[10] On August 21, 2015, the State charged Mother with possession of paraphernalia. Mother pleaded guilty four days later and was sentenced to a sixty-day suspended sentence and probation. On September 21, 2015, the State filed a petition to revoke Mother's probation. A warrant was issued for Mother's arrest, and the chronological case summary ("CCS") for the criminal

case reveals that she was arrested for this and "new charge(s)." Ex. Vol. p. 28. This CCS entry also indicated that Mother was "too intoxicated to bring to court for hearing today." *Id*. Mother admitted to violating her probation, and her probation was revoked.

[11] At a periodic review hearing held on August 10, 2015, the trial court found that Mother was not participating in services and that she was homeless and unemployed. Thereafter, DCS filed a petition to hold Mother in contempt of the trial court's dispositional order. On August 24, 2015, the trial court found Mother in contempt for failing to participate in services and visitation and for continuing to use illicit drugs. The trial court imposed a sixty-day sentence but suspended the sentence so long as Mother complied with the dispositional order. Mother failed to do so, and the trial court found her in contempt again on November 5, 2015. The court ordered Mother to serve twenty-four days in jail and attend an intake appointment at Centerstone; if Mother failed to do so, the court indicated it would impose the balance of the original sixty-day sentence.

[12] Mother did complete a substance abuse assessment at Centerstone after she was released from incarceration. Centerstone recommended that Mother participate in intensive outpatient drug treatment and undergo psychiatric and medical examinations. Mother participated in the intensive outpatient treatment at Centerstone but was eventually discharged from the program for lack of attendance and continued substance abuse. Due to Mother's continued drug

use, Centerstone was never able to complete the medical or psychiatric evaluations.

[13] In December 2015, Mother was referred to a third-party service provider for her supervised visitations with Son. During these twice-weekly visits, Mother had difficulty maintaining Son's attention, as Son tended to interact more with Father. In addition, during these visitations, Mother disturbingly referred to Son as "my little Jew," and "Hitler." Tr. p. 102. Moreover, as of the April 2016 termination hearing, Mother had last visited Son in January of that year. Apparently, Mother had again been incarcerated for possession of paraphernalia, and would not be released until May 2016. Mother was also facing pending charges for possession of a legend drug.[1]

[14] In February 2016, Son's permanency plan was changed from reunification with the parents to termination of the parents' parental rights. On February 9, 2016, DCS filed a petition to terminate Mother and Father's parental rights to Son. Both Mother and Father initially agreed to voluntarily relinquish their parental rights. Mother, however, later withdrew her consent to the termination. The trial court then held an evidentiary hearing on the termination petition on April 26, 2016, and entered an order terminating Mother's parental rights on May 5, 2016. Mother now appeals.[2]

---

[1] *See* Ind. Code ch. 16-42-19 (Indiana Legend Drug Act).

[2] Father does not participate in this appeal.

## Termination of Parental Rights

[15] The purpose of terminating parental rights is not to punish parents but instead to protect their children. *In re S.P.H.*, 806 N.E.2d 874, 880 (Ind. Ct. App. 2004). Although parental rights have a constitutional dimension, the law allows for their termination when the parties are unable or unwilling to meet their responsibilities as parents. *Id.* Indeed, parental interests must be subordinated to the child's interests in determining the proper disposition of a petition to terminate parental rights. *In re G.Y.*, 904 N.E.2d 1257, 1259 (Ind. 2009).

[16] Indiana Code section 31-35-2-4(b)(2) provides that a petition to terminate parental rights must allege:

> (B) that one (1) of the following is true:
>
> > (I) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
> >
> > (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
> >
> > (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

[17] DCS must prove each element by clear and convincing evidence. Ind. Code § 31-37-14-2; *G.Y.*, 904 N.E.2d at 1261. Because Indiana Code section 4(b)(2)(B) is written in the disjunctive, the trial court is required to find that only one

prong of subsection (b)(2)(B) has been established by clear and convincing evidence. *In re A.K.*, 924 N.E.2d 212, 220 (Ind. Ct. App. 2010).

[18] Clear and convincing evidence need not establish that the continued custody of the parent is wholly inadequate for the child's very survival. *Bester v. Lake Cnty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). It is instead sufficient to show by clear and convincing evidence that the child's emotional and physical development are put at risk by the parent's custody. *Id.* If the court finds the allegations in a petition are true, the court shall terminate the parent-child relationship. Ind. Code § 31-35-2-8(a).

[19] We have long had a highly deferential standard of review in cases involving the termination of parental rights. *In re D.B.*, 942 N.E.2d 867, 871 (Ind. Ct. App. 2011). We neither reweigh the evidence nor assess witness credibility. *Id.* We consider only the evidence and reasonable inferences favorable to the trial court's judgment. *Id.* In deference to the trial court's unique position to assess the evidence, we will set aside a judgment terminating a parent-child relationship only if it is clearly erroneous. *Id.* Clear error is that which leaves us with a definite and firm conviction that a mistake has been made. *J.M. v. Marion Cnty. Office of Family & Children*, 802 N.E.2d 40, 44 (Ind. Ct. App. 2004), *trans. denied*.

## Discussion and Decision

[20] On appeal, Mother claims that there was insufficient evidence to support the trial court's findings that she still struggled with an addiction to illicit drugs.

Mother focuses her argument on the fact that DCS did not admit into evidence the results of the drugs screens she failed. We understand Mother's argument to be that DCS failed to meet its burden to show, by clear and convincing evidence, that there was a reasonable probability that the conditions that resulted in the Son's removal or the reasons for his placement outside the parents' home, i.e., Mother's substance use problem, would not be remedied.[3]

[21] When deciding whether there is a reasonable probability that the conditions resulting in a child's removal or continued placement outside of a parent's care will not be remedied, the trial court must determine a parent's fitness to care for the child at the time of the termination hearing while also taking into consideration evidence of changed circumstances. *A.D.S. v. Ind. Dep't of Child Servs.*, 987 N.E.2d 1150, 1156-57 (Ind. Ct. App. 2013). However, the trial court may disregard efforts made only shortly before termination and weigh more heavily a parent's history of conduct prior to those efforts. *In re K.T.K.*, 989 N.E.2d 1225, 1234 (Ind. 2013).

[22] Here, notwithstanding Mother's assertions to the contrary, there was ample evidence from which the trial court could conclude that the reason for Son's removal from Mother's care, specifically that Mother's drug abuse, continued and would not be remedied. Indeed, the evidence presented to the trial court

---

[3] Mother makes no cognizable argument that DCS failed to meet its burden of proof on the remaining elements it was required to prove: that Son had been removed from the parents' care for the requisite period of time, that termination of Mother's parental rights was in Son's best interests, and that DCS had a satisfactory plan for the care and treatment of Son. We therefore do not address these elements.

was sufficient to establish that Mother has a serious and untreated substance abuse problem. Son was born with drugs in his system, and Mother admitted to using drugs during her pregnancy. Thereafter, from the time that Son was removed from Mother's care until Son's care permanency plan was changed from reunification to termination, Mother had more than one year to make significant progress in the treatment of her drug addiction, but she never did. Mother underwent a substance abuse assessment but never completed any of the substance abuse treatment programs to she was referred. Instead, she was removed from the intensive outpatient treatment program for her continued drug abuse. Mother also showed up to visitations apparently under the influence. Mother missed several drug screens and tested positive for others. Furthermore, Mother was arrested and convicted for possession of paraphernalia and was facing charges for possession of a legend drug. Clearly, Mother has a history of drug abuse which has yet to be successfully addressed.

[23] Therefore, the trial court did not clearly err when it concluded that DCS had presented clear and convincing evidence establishing that there was a reasonable probability that the conditions that resulted in the Son's removal or the reasons for his placement outside the parents' home would not be remedied. As this is Mother's only argument, we affirm the order of the trial court terminating Mother's parental rights to Son.

[24] Affirmed.

Baker, J., and Pyle, J., concur.